**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Charles Farber, Administrator of the Estate of Brandon Harrison Farber,<br><br>Plaintiff,<br>v.<br><br>LTF Club Operations Company, Inc.,<br><br>Defendants | Case No.: 2:26-cv-000367-JAD-DJA<br><br>**Order Granting Motion to Dismiss and Closing Case**<br><br>[ECF No. 7] |

Brandon Harrison Farber was playing indoor tennis at a Life Time Fitness gym in Henderson, Nevada in 2023 when he collapsed and suffered seizure-like activity. Emergency medical personnel struggled to transport him from the interior portion of the gym before he could be strapped to a gurney and taken to the hospital, and he later died at Sunrise Hospital in Las Vegas. So his estate sued LTF Club Operations Company, Inc. (the company that owns Life Time Fitness), the City of Henderson, the Henderson Fire Department, and several EMTs in state court under various negligence theories related to the emergency medical personnel's inability to efficiently remove Farber from the gym.[1] Farber's estate and the Henderson defendants reached a confidential settlement, and the only claims that remain are against Life Time Fitness.[2] Life Time now moves to dismiss those claims, arguing that they are barred by Nevada's statute of repose, the statute of limitations, and the member-usage agreement that Farber signed.[3] Because Life Time has established that the liability waiver in its member-usage agreement can be

[1] ECF No. 7-3.

[2] ECF No. 7 at 4.

[3] *Id.*

considered at the motion-to-dismiss stage and precludes the estate's claims, I grant the motion to dismiss and close this case.

## Discussion

### A. The Life Time Fitness member-usage agreement can be considered at the motion-to-dismiss stage under the incorporation-by-reference doctrine.

Both parties acknowledge that Farber signed a member-usage agreement that includes assumption-of-risk and liability-waiver provisions. Life Time contends that the court can consider the agreement's terms at this motion-to-dismiss stage because the first amended complaint refers to the agreement and its waiver provisions.[4] Farber's estate responds that this agreement cannot be considered as part of a motion to dismiss because it is not part of the pleadings.[5]

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a district court may consider only the pleadings and, if the court looks to evidence outside the pleadings, it must typically convert the motion into a Rule 56 motion for summary judgment and give the nonmoving party a chance to respond.[6] But courts may consider some other documents at the motion-to-dismiss stage without converting the motion into one for summary judgment: documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.[7] Documents are deemed incorporated by reference into a complaint if the allegations "refer[] extensively to the document or the document forms the basis of the

---

[4] ECF No. 10 at 6.

[5] ECF No. 9 at 8.

[6] *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

[7] *Id.*

plaintiff's claim."[8] The Ninth Circuit has stated that situations in which the incorporation-by-reference doctrine may apply include when a plaintiff's claim about insurance coverage is based on the contents of an insurance plan, or when a plaintiff's claim about stock fraud is based on the contents of SEC filings.[9] The Ninth Circuit has extended the doctrine of incorporation by reference to include situations in which "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance."[10]

The first amended complaint acknowledges that Farber signed the member-usage agreement "purporting to include assumption-of-risk and waiver provisions."[11] The estate argues that the waiver does not clearly and unequivocally release Life Time from liability for unsafe premises conditions and operational failures that impede emergency response and transport.[12] Although the member-usage agreement was not attached to the complaint, Farber's estate acknowledges that he signed the agreement, and it devotes several paragraphs to the agreement's scope. The complaint thus acknowledges that the viability of Farber's claims depends on the contents of the agreement. So I conclude that the incorporation-by-reference doctrine applies to the agreement and can therefore be considered at this motion-to-dismiss stage.

---

[8] *Ritchie*, 342 F.3d at 908; *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (finding that a blog post referenced in a two-sentence footnote in a complaint was not sufficiently "extensive" to meet the *Ritchie* standard, but a reference may be sufficiently extensive "if a single reference is relatively lengthy").

[9] *Ritchie*, 342 F.3d at 908.

[10] *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th. Cir. 2010).

[11] ECF No. 7-3 at 4, ¶ 22.

[12] *Id.* at 4, ¶¶ 22–25.

**B. The member-usage agreement bars the estate's claims.**

Liability waivers covering ordinary negligence are generally enforceable in Nevada, but exculpatory clauses are construed strictly and require particularity.[13] The Nevada Supreme Court has explained that an exculpatory provision "is generally regarded as a valid exercise of the freedom of contract," and it is "not convinced that public policy requires [it] to refuse to enforce [an exculpatory] provision."[14] But "additional standards must be met before [an exculpatory clause] will be interpreted so as to relieve a person of liability that the law would otherwise impose."[15] These standards include that exculpatory clauses must be construed strictly because "they are not the favorite of the law," that these contracts must spell out the party's intentions with "the greatest particularity," and that intent to release a party from liability must be shown by "express stipulation"—"no inference from the words of general import can establish it."[16]

The member-usage agreement that Farber signed is extensive and specific. The portion of the agreement outlining what kind of claims it bars states that it precludes a wide spectrum of negligence claims:

> I hereby voluntarily and forever release and discharge Life Time from . . . and agree not to sue Life Time for, and waive, any claims . . . for any Injuries to me . . . which arise out of, result from, or are caused by any Ordinary NEGLIGENCE OF LIFE TIME . . . or any other person . . . (collectively, "Negligence Claims") . . . . I understand that Negligence Claims include but are not limited to Life Time Fitness's (1) negligent design, construction (including renovation or alteration), repair, maintenance, operation,

[13] *Agric. Aviation Eng'g Co. v. Bd. of Clark Cnty. Com'rs*, 794 P.2d 710, 712–713 (Nev. 1990); *Miller v. A &R Joint Venture*, 636 P.2d 277, 278 (Nev. 1981).

[14] *Miller* 636 P.2d at 278.

[15] *Agric. Aviation*, 794 P.2d at 712–713.

[16] *Id.* at 713.

> supervision, monitoring, or provision of Life Time Fitness Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision of or failure to provide emergency care; (5) negligent provision of services; and (6) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers; or (7) other negligent act(s) or omission(s).[17]

The claims brought by Farber's estate all map directly onto parts of this provision. The first and second causes of action are negligence claims based on premises and operational liability, and several subsections of this paragraph squarely cover those claims. The estate's claim for failure to render aid during a medical emergency matches up with item (4)'s statement that it includes negligent provision of or a failure to provide emergency care. The claims about negligent hiring, training, retention, and supervision are covered by item (6)'s specific statement that claims of that nature are precluded.

The assumption-of-risk section of the member-usage agreement is similarly specific and extensive. It states that "there are dangers, hazards, and risks of injury or damage . . . in the use of Life Time's premises," and that injuries may include death, as well as "loss of consortium, love, affection, comfort, companionship, or care" and "pain and suffering."[18] This provision covers Farber's estate's wrongful-death and survival actions because it establishes that Farber assumed the risks of using the premises of Life Time, including the risk of delayed emergency care attributable to the gym's layout.[19]

---

[17] ECF No. 7-4 at 3, ¶ 3A.

[18] *Id.* at 2, ¶¶ 2, 2C.

[19] Because I conclude that the liability-waiver and assumption-of-risk provisions bar the estate's claims, I need not and do not address Life Time's alternative arguments for dismissal.

In the last sentence of the estate's response, it alternatively "requests leave to amend" the first amended complaint "to cure any perceived deficiencies."[20] Although the court must grant leave to amend freely "when justice so requires,"[21] leave to amend should be denied if the deficiencies cannot be cured and further amendment would be futile.[22] I find that the member-usage agreement conclusively bars the estate's negligence and wrongful-death claims arising from the factual circumstances surrounding Farber's death, and the estate has not offered any alternative factual bases or legal theories that would avoid that result. So, because granting leave to amend would be futile, I dismiss the complaint without leave to amend.

## Conclusion

IT IS THEREFORE ORDERED that the motion to dismiss **[ECF No. 7] is GRANTED**. Farber's complaint is DISMISSED without leave to amend. The Clerk of Court is directed to CLOSE THIS CASE.

U.S. District Judge Jennifer A. Dorsey
September 3, 2026

[20] ECF No. 9 at 10.

[21] Fed. R. Civ. P. 15(a)(2).

[22] *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018).